IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:24-cv-00711-DDD-STV

TOWN OF SUPERIOR, a municipal corporation of the State of Colorado; and THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF BOULDER, COLORADO, a County government in the State of Colorado,

    Plaintiffs,

v.

THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF JEFFERSON, COLORADO, as successors in interest to the Jefferson County Airport Authority; and DR. STEPHANIE CORBO in her official capacity as acting Airport Director of the Rocky Mountain Metropolitan Airport,

    Defendants.

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Motion to Dismiss was filed on March 29, 2024 [ECF #17]

This Court should deny Defendants' Motion to Dismiss (ECF #17, "Motion") for two independent reasons. *First*, as set forth in Plaintiffs' Motion to Remand ("Remand Motion," ECF #21), this Court does not have subject-matter jurisdiction over the case. *Second*, the Motion fails on its own merits.

## STATEMENT OF FACTS

Plaintiffs filed a single-count, state-law, public-nuisance complaint to protect their residents from the unreasonable injuries caused by piston-engine touch-and-go operations at the Rocky Mountain Metropolitan Airport ("Airport"). Defendants, the "proprietor" and "sponsor" of the Airport, have the authority and obligation to abate the nuisance they are causing. What's

1

more, *dozens* of airports enforce restrictions on touch-and-go operations, (Exhibit A, Declaration of Andrew Barr, ¶ 5)[1], demonstrating that Defendants can abate this nuisance.

Defendants' Motion attempts to recharacterize the nature of Plaintiffs' lawsuit. Defendants claim that this case is about the use of navigable airspace, commercial operations (*e.g.*, airlines), interstate operations, prohibitions of jets, certification of aviation fuel, and other inapposite issues. To avoid any doubts, Plaintiffs' lawsuit does not challenge the type or quantity of fuel sold at the Airport; nor do Plaintiffs seek to change which aircraft can operate, when such operations occur, or how frequently any particular aircraft operates at the Airport. Plaintiffs' lawsuit indisputably has no impact on interstate commerce, no impact on any "commercial" air operations, no impact on jets, and no impact on any air carrier's "rates, routes, or services." Plaintiffs are not asking Defendants to regulate the use of navigable airspace, make or change flight paths, alter any aspect of an aircraft's in-flight activities, or create noise standards for piston-engine aircraft. And finally, Plaintiffs' lawsuit does not challenge or impact flight training at the Airport.[2]

This Court should deny the Motion.

---

[1] This Court can take judicial notice of publicly available information provided by governments. Fed. R. Civ. P. 201(b)(2).

[2] Contrary to Defendants' hyperbole that "[w]ithout touch-and-go operations at an airport, there will be no training of the next generation of pilots," (Motion at 2), touch-and-goes are not a required (or even acknowledged) maneuver to obtain any pilot certificate, 14 C.F.R. §§ 61.102 *et seq.*, nor are touch-and-goes tested during the private pilot practical examination, *see* FAA Private Pilot – Airplane, Airman Certification Standards, *available* here. Flight training can coexist with a touch-and-go restriction.

## ARGUMENT

### I.  This Court Does Not Have Subject-Matter Jurisdiction

As the Remand Motion demonstrates, subject-matter jurisdiction is lacking and this case should be remanded to state court.

### II.  Plaintiffs' Claim is Not Preempted

Defendants argue that Plaintiffs' claim is preempted by the Federal Aviation Act, 49 U.S.C. § 40101, *et seq*. (the "FAA Act"). (Motion at 7.) Defendants provide no explanation of their position, cite no section of the FAA Act that they contend is incompatible with the relief Plaintiffs seek, and wholly ignore the FAA Act's "savings" clause that expressly preserves "*any other remedies* provided by law." 49 U.S.C. § 40120(c) (emphasis added). Defendants' argument fails.

#### A.  Legal Standard

Under Rule 12(b)(6), this Court "must accept as true all well-pleaded facts … and those facts must be viewed in the light most favorable to the non-moving party." *Moss v. Kopp*, 559 F.3d 1155, 1161 (10th Cir. 2009).

This Court must "start with the assumption that the historic police powers of the States were not to be superseded by [federal law] unless that was the clear and manifest purpose of Congress" because "Congress does not exercise lightly the extraordinary power to legislate in areas traditionally regulated by the States." *Fish v. Kobach*, 840 F.3d 710, 727 (10th Cir. 2016) (cleaned up). Defendants do not identify "an express congressional command" that they argue preempts Plaintiffs' claim. *See Cipollone v. Liggett Group Inc.*, 505 U.S. 504, 516 (1992). As a result, Plaintiffs' claim may proceed unless "it is impossible for [Defendants] to comply with

3

both state and federal requirements, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Cook v. Rockwell Intern. Corp.*, 618 F.3d 1127, 1143 (10th Cir. 2010). Defendants "bear the burden of showing that federal and state law conflict." *Kobach*, 840 F.3d at 727.

### B. Defendants Fail To Address Lead-Based Allegations

Defendants' preemption argument fails because they do not address Plaintiffs' lead-particulate-exposure allegations. Defendants' unexplained case cites contain no reference to "lead," "pollution," or "particulates." (Motion at 7-9.) True, one case references "noise nuisance actions." But that has no bearing on a material aspect of Plaintiffs' claim: lead emissions. (*E.g.*, ECF #1-1, Complaint, ¶¶ 96-126.)[3] Defendants failed to meet their burden as an aspect of Plaintiffs' claim is not addressed. *Cook*, 618 F.3d at 1143.

### C. Noise Suits Routinely Proceed Against Airport Sponsors

"Airport owners acting as proprietors can presently deny the use of their airports to aircraft on the basis of noise considerations so long as such exclusion is nondiscriminatory." *City of Burbank v. Lockheed Air Terminal*, 411 U.S. 624, 636 n.14 (1973).[4] The FAA Act "does not preempt common-law actions against municipally owned airports based on excessive noise or emissions that result in a public nuisance." *In re Changes in Physical Structures & U.S. at Burlington Int'l Airport for F-35a*, 117 A.3d 457, 468 (Vt. 2015); *Greater Westchester Homeowners v. City of Los Angeles*, 26 Cal.3d 86, 100, 102 (Cal. 1979) (holding that federal

---

[3] The word "lead" appears more than 70 times in the Complaint.

[4] The Airport Noise and Capacity Act of 1990 ("ANCA") changes this result as it relates to "Stage 2" and "Stage 3" aircraft (*i.e.*, jets). Piston-engine aircraft are "nonstage" and thus not governed by ANCA. FAA Order 5190.6B, 13.4. As Defendants acknowledge, *Burbank* remains good law. (*See* Motion at 6.)

aviation law did not preempt "noise disputes between airport owners ... and property owners" or provide airport operators "immunity from traditional nuisance liability"); *Owen v. City of Atlanta*, 277 S.E.2d 338, 340–41 (Ga. App. Ct. 1981) (rejecting notion that "preemption [was] a doctrine behind which an airport proprietor whose facility creates a 'nuisance' may hide"); *Alaska Airlines, Inc. v. City of Long Beach*, 951 F.2d 977, 982 (9th Cir. 1991) (holding that an airport proprietor's "authority to control airport noise is not preempted by federal law"). Defendants fail to explain why this case is different.

D. The FAA Recently Reaffirmed Defendants' Authority To Abate The Nuisance.

Preemption does not defeat Plaintiffs' claim unless it is "impossible" for Defendants to comply with both state and federal law. *Cook*, 618 F.3d at 1143. In the FAA's September 2023 update to FAA Order 5190.6B—the FAA Order governing compliance with the Grant Assurances—the FAA provides at least two distinct ways Defendants can abate the nuisance consistent with federal law. FAA Order 5190.6B ("Order"), *available* here.

**Noise Restrictions**: Chapter 13 of the Order governs "Airport Noise and Access Restrictions." In Chapter 13, the FAA states that airport sponsors (like Jefferson County) are "primarily responsible for planning and implementing action designed to reduce the effect of noise on residents of the surrounding area [which can include] *restrictions on airport use* that do not unjustly discriminate against any user, impede the federal interest in safety and management of the air navigation system, or unreasonably interfere with interstate or foreign commerce." Order at 13.2(b)(2) (emphasis added). Indeed, airport proprietors have "authority to *restrict access as a means of reducing aircraft noise impacts in order to improve compatibility with the local community*." *Id*. at 13.2(b)(7) (emphasis added). "The responsibility for determining the

5

acceptable and permissible land uses and the relationship between specific properties and specific noise contours rests with the local authorities." *Id*. at Ch. 13, Table 1.  FAA determinations regarding compatible land uses "are not intended to substitute … for those determined to be appropriate by local authorities in response to locally determined needs and values in achieving noise compatible land uses." *Id*.  In this case, given that "land acquisitions, easements, noise abatement procedures, and sound insulation," *id*. at 13.8(b), have proven inadequate to protect the local community and several avigation easements that benefited the Airport were recently vacated, (Barr Decl. at ¶¶ 3-4, Ex. A, B), "a restriction is the only remaining option that could provide noise relief," Order at 13.8(a).

Only *after* Defendants exercise their proprietary authority to implement a noise restriction—as expressly permitted by the FAA in the Order—can the FAA "evaluate whether the restriction places an undue burden on interstate or foreign commerce or the national aviation system, and whether the restriction affects the sponsor's ability to meet its federal obligations." Order at 13.6.  Here, touch-and-goes are "entirely local" and thus do not "create an undue burden on interstate commerce." *Id*. at 13.15(a), (b).  Similarly, the sponsor's "federal obligations" are satisfied as the restriction would apply to all airport users equally—no operator of a piston-engine aircraft would be permitted to perform touch-and-goes—and thus the restriction would not "unjustly discriminate against any user." *Id*. at 13.2(b)(2); *see Arapahoe Cty. Pub. v. Centennial Exp*, 956 P.2d 587, 596 (Colo. 1998) (analyzing the Grant Assurances and finding that the airport sponsor "is not discriminating against a particular operator because the ban on scheduled passenger service applies to all airport users equally").  Simply put, there is nothing stopping Defendants from abating the public nuisance created by piston-engine touch-and-goes.

6

**Safety Restrictions**: Separate from noise abatement, Defendants can implement restrictions based on safety. Order at 14.1 *et seq*.[5] "Grant Assurance 22 [states that] 'the airport sponsor may prohibit or limit any given type, kind, or class of aeronautical use of the airport if such action is reasonable and necessary for the safe operation of the airport or necessary to serve the civil aviation needs of the public.'" *Id*. at 14.3. "Any restriction proposed by an airport sponsor based upon safety and efficiency, including those proposed under Grant Assurance 22(i) must be adequately justified and supported." *Id*. This expressly includes touch-and-goes:

> A touch-and-go … cannot be prohibited by the airport sponsor without justification. For an airport sponsor to limit … touch-and-go operations, the limitation must be based on an analysis of safety and/or efficiency and capacity, and meet any other applicable requirements for airport noise and access restrictions explained in [the Order].

*Id*. at 14.8. True, any proposed *safety*-based restriction will ultimately require FAA approval before it can go into effect, *id*. at 14.3[6], but no such pre-approval applies to *noise*-based restrictions, *id*. at 13.6. And regardless, the sponsor is the only entity that can propose the restriction for FAA approval in the first place. Defendants can abate the nuisance consistent with federal law.

### E.   The FAA Act's "Savings" Clause Expressly Permits Plaintiffs' Claim

Defendants have failed to demonstrate that the FAA Act contemplates, much less preempts, an airport proprietor's ability to restrict piston-engine touch-and-goes to abate a

---

[5] Defendants acknowledge that ANCA is not implicated by Plaintiffs' claim. (Motion at 5.) As a result, any safety or efficiency restriction "will be subject to review only for compliance with grant assurance and Surplus Property Act obligations." Order at 14.2, n.2. The Surplus Property Act is not at issue.

[6] The FAA has sole authority to determine aviation *safety* matters and thus a sponsor cannot substitute its judgment regarding safety for that of the FAA. The same is not true regarding noise. *See* Order at 13.3; *Burbank*, 411 U.S. at 636.

nuisance. Defendants do not explain which section of the FAA Act they claim preempts Plaintiffs' claim and thus fail to meet their burden. *See Cook*, 618 F.3d at 1144 (holding that defendants must "indicate the particular standards of care applicable to a state law trespass or nuisance claim they believe are in conflict with [federal law]").

Assuming *arguendo* this Court finds that the FAA Act applies to Plaintiffs' claim, the FAA Act's broad "savings" clause expressly preserves state-law remedies: "A remedy under this part is in addition to *any other remedies* provided by law." 49 U.S.C. § 40120(c) (emphasis added). The savings clause does not distinguish between monetary or equitable relief and thus Plaintiffs' relief is expressly *not preempted* by the FAA Act. *See Aviation Cadet Museum, Inc. v. Hammer*, 373 Ark. 202, 203 (Ark. 2008) (relying on § 40120(c) to affirm "an injunction to enjoin [airport operator] from using its airport for purposes of allowing airplanes to land and depart therefrom"); *Emerald Dev. Co. v. McNeill*, 82 Ark. App. 193, 195-97 (Ark. Ct. App. 2003) (relying on § 40120(c) to enjoin airport construction because "the historic police powers of the states are not to be superseded by a federal act unless that is the clear and manifest purpose of Congress"); *Carter v. Cent. Reg'l W. Va. Airport Auth.*, 2016 WL 4005932, at *24 (S.D.W. Va. July 25, 2016) ("the savings clause has played a key role in the determination that part or all of a state law is not preempted by the [FAA Act]"); *Abdullah v. American Airlines, Inc.*, 181 F.3d 363, 365 (3d. Cir. 1999) (same).

Moreover, "the plain text of a federal statute 'accurately communicates the scope of Congress's preemptive intent.'" *Kobach*, 840 F.3d at 727 (quoting *Ariz. v. Inter Tribal Council of Ariz.*, 570 U.S. 1, 21 (2013)). Defendants do not even attempt to explain how the broad savings clause of § 40120(c)—which preserves "*any other remedies*"—would somehow preempt

a claim seeking injunctive relief. And courts have for decades found "that the traditional state and territorial law remedies continue to exist" under the FAA Act's saving's clause. *Abdullah*, 181 F.3d at 375; *Elsworth v. Beech Aircraft Co.*, 37 Cal.3d 540, 549 (Cal. 1984) ("remedies that a party may have under state law" are not abridged by the FAA). Injunctive relief is a traditional state law remedy and it is preserved by the savings clause.

This result is buttressed by the scope of the savings clause. The FAA Act's savings clause applies to all "Air Commerce and Safety" statutes, codified at 49 U.S.C. §§ 40101 – 46507, which includes the Airline Deregulation Act's ("ADA") "preemption provision" that expressly preserves the authority of a "political subdivision of a State … that owns or operates an airport … [to] carry[] out its proprietary powers and rights." *Id*. § 41713(b)(3). In line with myriad other courts, the Colorado Supreme Court has observed that this section preserves "an airport proprietor's ability to regulate airport noise." *Araphaoe Cty.*, 956 P.2d at 595 (collecting cases). Indeed, because an airport proprietor "may be held liable for excessive noise, airport proprietors may restrict aircraft operations to accommodate permissible noise levels under the proprietor's exception." *Id*. The FAA Act cannot be understood to preempt Plaintiffs' claim while, at the same time, allowing an airport proprietor to "restrict aircraft operations to accommodate permissible noise levels under the proprietor's exception." *See id*.

Rather than explain how the FAA Act applies to Plaintiffs' claim or identify any specific conflict between the FAA Act and Colorado public-nuisance law, Defendants provide a lengthy quote from a 1983 case discussing a Wisconsin "noise nuisance action" under a prior version[7] of

---

[7] The savings clause in *Krueger* read: "[n]othing in this chapter shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies."

9

the FAA Act. (Motion at 7-8 (quoting *Krueger v. Mitchell*, 112 Wis. 2d 88, 90 (Wis. 1983).)[8] In *Krueger*, an individual sued a private airport's owners for nuisance and sought to prevent construction of a new runway. 112 Wis. 2d at 91. The court found that "under the [FAA] Act airport proprietors continue to have the primary responsibility for regulating and controlling the noise level of the particular airport in order to meet the local needs of the surrounding community." *Id*. at 98-99; *see* Order at 13.2(b). Because Congress "has continued to allow airport proprietors to exercise substantial control over airport facilities in order to control airport noise in light of the needs of the particular community, it follows that airport proprietors are amenable to nuisance actions alleging that such control decisions result in unreasonable noise levels." 112 Wis. 2d at 99. Up to this point, *Krueger's* analysis mirrors decisions from both federal and state courts.

Then *Krueger* diverged from all other courts and held that the FAA Act did not preempt plaintiff's damages claims but did preempt injunctive relief. *Id*. at 102. The court reasoned that if "state courts were allowed to enjoin the operation of all or part of an airport based on nuisances to neighboring property, air commerce would be completely disrupted." *Id*. But the court had recognized that "in order for common law nuisance actions based on aircraft noise to be preempted by the Act, Congressional intent to do so must be clear," *id*. at 94, and that the Supreme Court had directed "that a common law action survives the [FAA] Act unless the action is 'absolutely inconsistent' with the Act," *id*. at 101. The *Krueger* court failed to explain what

---

[8] The remaining cases cited by Defendants are inapposite given that Plaintiffs' claim does not concern: "actual aircraft operation technique or scheduling," *Ne. Phx. Homeowners' Ass'n v. Scottsdale Mun. Airport*, 636 P.2d 1269 (Ariz. 1981); "commercial flights," *Greater Westchester*, 603 P.2d at 1329; or "regulation of navigable airspace," *U.S. v. City of New Haven*, 367 F. Supp. 1338 (D. Conn. 1973).

"Congressional intent" made equitable relief "absolutely inconsistent" with the FAA Act and accordingly its outcome is faulty and unpersuasive. *See Hammer*, 373 Ark. at 203 (rejecting argument that FAA Act preempts injunctive relief); *McNeill*, 82 Ark. App. at 197 (same); *Birkett v. City of Chicago*, 329 Ill. App. 3d 477, 488 (Ill. App. Ct. 2002) (declining to follow *Krueger*). Notably, to Plaintiffs' knowledge, in the 40 years since *Krueger* was decided, no court has adopted this distinction (and Defendants have not cited any such cases), likely because there is no statutory basis to treat the form of relief differently.

*   *   *   *   *

Defendants have failed to demonstrate that Plaintiffs' claim is preempted.

### III. Plaintiffs Adequately Pleaded That Defendants Caused the Nuisance

Defendants next argue that Plaintiffs have failed to state a claim because "the cause of the alleged nuisance is not Jefferson County's acts or omissions but rather the requirement in Grant Assurance 22, as enforced by the FAA, that the Airport accommodate all aeronautical operations, including touch-and-go operations." (Motion at 10.) This argument fails for several reasons.

*First*, Plaintiffs clearly allege that Defendants "caused" and can abate the public nuisance. (*E.g.*, Complaint ¶¶ 1, 160-63, 172, 185-97.) Under Rule 8, this satisfies Plaintiffs' pleading obligation.

*Second*, the FAA has recently reaffirmed that Defendants can abate this nuisance consistent with the Grant Assurances. *Supra* at II(D).

*Third*, courts have made clear that airport sponsors can control noise and emissions stemming from their airports notwithstanding the Grant Assurances. *Supra* at II(C), (E).

11

*Finally*, Defendants cannot voluntarily enter into a contract (the Grant Assurances) and then use that contract as a shield from nuisance liability.  *E.g.*, *F-35a*, 117 A.3d at 468 (allowing public-nuisance claim to proceed against sponsor of grant-obligated airport).  Similarly, a purported threat on Defendants' ability to enter into future contracts (future federal airport grants) does not excuse the public nuisance they are creating.  *Id.*

For these reasons, Plaintiffs have adequately pleaded causation.

### IV.     Defendants Fail To Demonstrate The FAA Is An Indispensable Party

In order to dismiss a case pursuant to Rule 12(b)(7), the court must find that: (1) the party is a required person under Rule 19(a), (2) joinder of the party is infeasible under Rule 19(b), and (3) dismissal is appropriate based on equity and good conscience.  *Nat'l Union Fire Ins. Co. of Pittsburgh v. Intrawest ULC*, 2014 WL 1016072, at *2 (D. Colo. Mar. 14, 2014).  Defendants have the burden to show that Rule 19 applies.  *Citizen Band Potawatomi Indian Tr. v. Collier*, 17 F.3d 1292, 1293 (10th Cir. 1994).  Moreover, as Defendants acknowledge (Motion at 7, 10-11), Defendants must "***produc[e] evidence*** showing the nature of the interest possessed by an absent party and that the protection of that interest will be impaired by the absence."  *Collier*, 17 F.3d at 1293 (emphasis added).  Defendants may satisfy this burden by providing "affidavits of persons having knowledge of these interests as well as other relevant extra-pleading evidence."  *Id.*; *Intrawest ULC*, 2014 WL 1016072, at *3 (denying Rule 12(b)(7) motion because "defendants fail to provide affidavits or other evidence to show the nature and extent of such an interest").  "A Rule 12(b)(7) motion will not be granted on the vague possibility that persons who are not parties may have an interest in the action."  *Intrawest ULC*, 2014 WL 1016072, at *2.

*First*, Defendants have not produced any evidence showing the nature of the FAA's alleged interest in this case. This alone defeats Defendants' argument. *See Collier*, 17 F.3d at 1293.

*Second*, even if this Court were to look beyond the total lack of evidence produced by Defendants (which it should not), Defendants did not argue, much less demonstrate, that (1) the FAA is a "required" person under Rule 19(a); (2) the FAA's joinder is "infeasible"; or (3) dismissal is the appropriate remedy (assuming the first two factors are met). Defendants ignored the *entire* showing required under Rule 19 and thus did not satisfy their burden. *Collier*, 17 F.3d at 1293.

*Third*, Defendants argue only that this case presents a risk of "inconsistent obligations." (Motion at 10-13.) Under Rule 19, "[i]nconsistent obligations occur when a party is unable to comply with one court's order without breaching another court's order concerning the same incident." *Entek GRB, LLC v. Stull Ranches, LLC*, 2013 WL 1283811, at *3 (D. Colo. Mar. 27, 2013). Defendants do not cite any court order, judgment, or other binding obligation that would be violated if Plaintiffs obtain the relief they seek. This, too, is dispositive.[9]

The only "obligation" that Defendants claim is "inconsistent" with the relief Plaintiffs seek is the Grant Assurances. (Motion at 11.) But as explained, courts and the FAA itself have acknowledged that Defendants can abate this public nuisance without violating federal law or the Grant Assurances. *Supra* at II(C), (D), (E).

---

[9] A hypothetical FAA administrative action is not sufficient because "an unsubstantiated or speculative risk will not satisfy the Rule 19(a) criteria." *Sac & Fox Nation of Mo. v. Norton*, 240 F.3d 1250, 1259 (10th Cir. 2001).

*Finally*, Defendants do not cite a single case finding that the FAA is a "necessary party" under Rule 19, which is not surprising given that courts routinely resolve public nuisance claims against airport proprietors without the FAA as a party.  *E.g.*, *Kagy v. Toledo-Lucas County Port Authority*, 126 Ohio App. 3d 675 (Ohio Ct. App. 1998); *Koll-Irvine Center Property Owners Assn. v. County of Orange*, 24 Cal.App.4th 1036 (Cal. Ct. App. 1994).  Rather than provide any pertinent authority, Defendants cite inapplicable cases concerning other federal agencies.[10]

Defendants failed to satisfy their burden.

### V.   Dr. Corbo Is a Proper Defendant

Defendants argue that Dr. Corbo is an "unnecessary[]" defendant.  (Motion at 13-14.) Setting aside that the standard is not "necessary," Plaintiffs plead that Dr. Corbo, as the acting Airport Director, is the government official responsible for implementing airport rules and has day-to-day responsibility for operations at—and nuisance caused by—the Airport.  Plaintiffs allege *inter alia* that Dr. Corbo "has the authority to implement safety and operational rules at the Airport" and is causing harm to their residents.  (*E.g.*, Complaint ¶¶ 8, 185-97.)  Dr. Corbo is thus a proper defendant.

---

[10] *Lazar v. Benson*, 156 F. Supp. 259, 268, 273 (E.D.S.C. 1957) (finding Department of Agriculture indispensable in case challenging federal regulations); *Boles v. Greeneville Housing Authority*, 468 F.2d 476, 479 (6th Cir. 1972) (finding Department of Housing and Urban Development indispensable in case challenging federal administrative decision); *E.E.O.C. v. Peabody W. Coal*, 610 F.3d 1070, 1080-82 (9th Cir. 2010) (finding Interior Department indispensable in case challenging a federal lease); *Pa. Higher Educ. Assistance Agency v. Perez*, 416 F. Supp. 3d 75, 92-94 (D. Conn. 2019) (finding federal agency indispensable in case concerning federal contract).

## CONCLUSION

If this Court finds it has subject-matter jurisdiction over this case, it should deny the Motion.

DATED this 3rd day of May, 2024.

                                           Respectfully submitted,

                                           /s/ Andrew Barr
                                           Andrew Barr (49644)
                                           John A. Wharton (47776)
                                           Lindsay Aherne (48391)
                                           GREENBERG TRAURIG, LLP
                                           1144 15th Street, Suite 3300
                                           Denver, CO  80202
                                           Andrew.Barr@gtlaw.com
                                           WhartonJ@gtlaw.com
                                           AherneL@gtlaw.com

                                           *Counsel for Plaintiffs*

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1) and contains 4,000 words.

                                           /s/*Andrew Barr*

## CERTIFICATE OF SERVICE

      I hereby certify that on this 3rd day of May 2024, a true and correct copy of the foregoing **OPPOSITION TO MOTION TO DISMISS** was electronically filed with the Clerk of the Court using the CM/ECF electronic filing system, which will send an electronic copy of this filing to all counsel of record.

                                              /s/ *Karen R. Loveland*