**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:24-cv-000711-DDD-STV

TOWN OF SUPERIOR, COLORADO, a municipal corporation of the State of Colorado; and THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF BOULDER, COLORADO, a County government in the State of Colorado,

      Plaintiffs,

v.

THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF JEFFERSON, COLORADO, as successors in interest to the Jefferson County Airport Authority; and DR. STEPHANIE CORBO, in her official capacity as acting Airport Director of the Rocky Mountain Metropolitan Airport,

      Defendants.

**DEFENDANTS' REPLY IN SUPPORT OF THEIR
MOTION TO DISMISS THE COMPLAINT**

Opposition was filed on May 3, 2024 [ECF 24]

## INTRODUCTION

Defendants Board of County Commissioners of Jefferson County (the "County") and Dr. Stephanie Corbo ("Dr. Corbo") (collectively, the "Defendants") submit this reply in support of their motion to dismiss the Complaint (ECF 17; the "Motion") and to rebut "Plaintiffs' Opposition to Defendants' Motion to Dismiss ("Opp.").

**I.    THIS COURT POSSESSES SUBJECT MATTER JURISDICTION.**

Plaintiffs' initial argument is that subject matter jurisdiction is lacking. *See* Opp., p.3. However, as set forth in Defendants' Notice of Removal (ECF 1) and opposition to Plaintiffs'

1

motion for remand (ECF 23), federal jurisdiction exists in this Court because the County's ability to lawfully impose a total ban on piston-engine touch-and-go flight operations at Rocky Mountain Metropolitan Airport ("RMMA" or the "Airport") depends on a substantial question of federal law: namely, whether such a prohibition would violate the Airport and Airway Improvement Act of 1982, 49 U.S.C. § 47107 ("AAIA"), and Grant Assurance 22, which requires federally funded airports to accommodate, and not unjustly discriminate against, aeronautical activities—including piston-engine touch-and-go operations.

## II. FEDERAL LAW PREEMPTS ACTIONS FOR INJUNCTIVE RELIEF IN AVIATION NOISE NUISANCE ACTIONS.

A primary basis for dismissal is that, as set forth in *Krueger v. Mitchell*, 112 Wis. 2d 88, 332 N.W.2d 733, 740 (1983), "injunctive relief is completely preempted in aviation noise nuisance actions because of the disruptive impact such a remedy would have on air commerce." ECF 17, at 7-8.  As the court stated, "Allowing state court ordered injunctions to abate an aircraft noise nuisance would have such a severe impact on the free flow of air commerce that such remedy cannot co-exist with the" Federal Aviation Act.  *Id*.

Plaintiffs insist that *Krueger* "diverged from all other courts."  Opp., p.10.  However, Plaintiffs only cite to two inapposite state court cases – *Aviation Cadet Museum, Inc. v. Hammer*, 373 Ark. 202, 203 (2008), and *Birkett v. City of Chicago*, 329 Ill. App. 3d 477, 488 (Ill. 2002). *See* Opp., p.11.  *Hammer* involved a "privately-held, public-access airport" owned by a museum.  There was no discussion of any federal law or the Grant Assurances, likely because the museum had not received federal funding, and was therefore not have been subject to the AAIA and Grant Assurances.

In *Birkett*, the court stated that the AAIA did not preempt the state statute at issue because the "AAIA regulates federal funding of airport development and improvement projects," and the "Illinois statute at issue" did "not address federal funding." 329 Ill. App. 3d at 488. This statement fails to consider the negative impact of an airport sponsor violating its federal Grant Assurance obligations. Moreover, the court stated that the "cases cited by the City to support its preemption argument are distinguishable because" the "statute at issue" did "not regulate the use of airspace or aircraft." *Id*. at 489. Yet that is precisely what this case involves: Efforts by Superior and Boulder to regulate the use of airspace and aircraft.

In addition, Plaintiffs fail to acknowledge that *Birkett* was reversed in part by the Illinois Supreme Court in *Birkett v. City of Chicago*, 202 Ill. 2d 36, 56-57, 779 N.E.2d 875, 887 (2002), where the court stated: "In light of our conclusion that IDOT certification is unnecessary for the proposed terminal and ground transportation improvements at issue in this case, we need not decide whether section 47's certification requirement is preempted by federal law."

Finally, in *In re Changes in Physical Structures v. U.S. at Burlington Int'l Airport*, 117 A.3d 457 (Vt. 2015) [accord Opp., p.4], the court ruled that "any action to regulate a change in use to the F-35 A [aircraft] would amount to an attempt to regulate noise and be preempted." *Id*. at 467; *see also id.* at 468 ("Even imposing restrictions to mitigate the effects of noise, such as requiring berms or additional landscaping, would be a regulation of the noise" and "it is preempted by federal law").

### III.   TOUCH-AND-GO PROCEDURES ARE A WELL-ACCEPTED MAINSTAY OF PILOT TRAINING AT AIRPORTS.

Plaintiffs' efforts to downplay the need for touch-and-go operations is unpersuasive. Touch-and-go operations are a "staple" of pilot training. Exhibit A.1 to Declaration of M. Roy Goldberg (Exhibit A hereto) ("Flying Lessons"). "This procedure can be very beneficial in a training situation." Exhibit A.2.

Moreover, the FAA has made it clear that the airspace in which the touch-and-go operations take place is suitable for such procedures. In a 2009 letter, the FAA stated that 14 C.F.R. § 91.119, titled "Minimum safe altitudes: General," "'does generally not apply to aircraft operations within airport traffic patterns,' and that 'aircraft operating within a traffic pattern are excepted from the regulation for a considerable portion of each pattern, i.e., during climb to pattern altitude following each takeoff, and during descent from pattern altitude prior to each landing.'" Exhibit A.3 at 1. With regard to touch-and-go landings, the FAA added:

> [T]he takeoff and landing exception to § 91.119 "applies equally to all practice approaches, **including repeated 'touch and go,'** 'stop and go,' and 'low approach' operations . . . ." **We would like to emphasize that the NTSB has also applied the § 91.119 takeoff or landing exception to touch and go landings and other practice maneuvers**.

*Id.* at 2 (emphasis added).

More recently, the FAA sent a letter with regard to the City of Torrance, California's effort to enjoin left turns for aircraft taking of at the Torrance airport, stating that the local airport's "airspace restriction" relating to left-turns upon takeoff "is not consistent with the FAA's statutory and regulatory framework; and relevant case law." Exhibit A.4, at 2.

4

IV. **THE COUNTY IS NOT FREE TO BAN ALL PISTON-ENGINE AIRCRAFT FROM ENGAGING IN TOUCH-AND-GO PROCEDURES AT RMMA.**

Plaintiffs' assertion that the County is free to unilaterally ban all piston-engine touch-and-go procedures (*see* Opp., p.1) is mistaken. The FAA has made it clear that local airports cannot unilaterally impose "in-flight restrictions regulating aircraft departure procedures." Exhibit A.4, at 2. Moreover, under the AAIA and Grant Assurance 22(a) the County may not impose a ban on aeronautical activities at the airport that unjustly discriminates against one type of aeronautical user. Yet that is precisely the situation with the injunction sought by Plaintiffs: namely, to prohibit piston-engine aircraft **and only piston-engine aircraft** from performing touch-and-go takeoffs and landings. By contrast, the jet aircraft that use RMMA are free to engage in touch-and-go procedures whenever they like.

Significantly, Plaintiffs concede that exclusion of aircraft "on the basis of noise considerations" must be "nondiscriminatory." Opp., p.4. This concession is fatal to their argument here. Given the undisputed benefit of touch-and-go operations, the County is being asked to discriminate against one type of aircraft (piston-engine aircraft) over other aircraft types with no rational justification for the different treatment. Moreover, if all airports ban touch-and-go operations for piston-engine aircraft, how will pilots for those planes obtain and retain their FAA licenses. The County cannot prohibit piston-engine aircraft from touch-and-go takeoffs and landings unless it can point to FAA findings that there is a genuine, documented safety risk from allowing the touch-and-go operations to occur. Motion, p.5.

The cases cited by Plaintiffs are unavailing and puzzling to say the least. For example, Plaintiffs cite *Arapahoe County Pub. v. Centennial Exp.*, 956 P.2d 587, 596 (Colo. 1998), *see*

5

Opp., p.6, but fail to note the fact that the Tenth Circuit heavily criticized the state court decision in *Arapahoe County Public Airport Auth. v. FAA*, 242 F.3d 1213 (10th Cir. 2001). The Tenth Circuit ruled that (1) the Colorado Supreme Court decision did not preclude FAA from determining that the airport's ban on passenger air service violated the airport's Grant Assurance obligations, and (2) the ban was preempted by federal law because of the FAA's finding that the airport unreasonably exercised its proprietary powers. The court stated:

> If given preclusive effect, state court rulings favoring local airport authorities in actions tangentially involving federal grant assurances would further lead to inconsistent enforcement of the federally mandated assurances, potentially jeopardizing the efficiency and equality of access to our nation's air transportation system. . . . The Colorado Supreme Court's decision in *Arapahoe County* . . . therefore has no bearing on the FAA decision . . . .

*Id*. at 1221.

Similarly, Plaintiffs' cite to *Abdullah v. American Airlines, Inc.*, 181 F.3d 363 (3d Cir. 1999), but that decision fully supports preemption here. Specifically, the court stated:

> [C]ourts have found federal preemption of discrete, safety-related matters, such as airspace management, flight operations, and aviation noise, because of the promulgation of specific federal regulations over those aspects of air safety. Indeed, it would be illogical to conclude that, while federal law preempts state and territorial regulation of matters such as pilot licensing, it does not preempt regulations relating to the exercise of the specific skill for which licensing is necessary – pilots' operation of aircraft.

*Id*. at 371.

In *Greater Westchester Homeowners v. City of Los Angeles*, 26 Cal. 3d 86 (Cal. 1979), the court stated that "commercial flights which are conducted in strict compliance with federal regulations **may not be enjoined as nuisances**, both because of the continuing public interest in air transportation, and because of the likelihood of direct conflict with federal law." *Id*. at 94 (emphasis added).

6

Plaintiffs also cite *Owen v. City of Atlanta*, 277 S.E.2d 338, 340-41 (Ga. App. 1981). See Opp., p.5. But the court there expressly recognized that an airport owner's "power to impose airport use restrictions" requires that "such restrictions are reasonable and nondiscriminatory." Similarly, *Alaska Airlines, Inc. v. City of Long Beach*, 951 F.2d 977 (1991), did not involve a claim that the airport was imposing its noise restrictions on only one type of aircraft (as is the case here).

V. **THE FAA AIRPORT COMPLIANCE MANUAL DOES NOT AUTHORIZE THE COUNTY TO BAN ALL PISTON-ENGINE AIRCRAFT FROM CONDUCTING TOUCH-AND-GO TAKEOFFS AND LANDINGS.**

Plaintiffs erroneously assert that Sections 13 and 14 of the FAA's Airport Compliance Manual, Order 5190.6B, authorize the County to ban all piston-engine aircraft from touch-and-go procedures at the Airport. *See* Opp., p.5-7. However, none of the subsections cited by Plaintiffs authorize an airport sponsor to unilaterally ban some types of aircraft from operating touch-and-go procedures, especially where other aircraft types are not so restricted. In fact, the Manual makes clear that "The federal government has preempted the areas of airspace use and management, air traffic control, safety, and the regulation of aircraft noise at its source." In addition, Section 13.13 specifies that "Consistent with Grant Assurance 22, *Economic Nondiscrimination*, airport sponsors are prohibited from unjustly discriminating among airport users when implementing a noise-based restriction." Further, Section 14.8, "Restrictions on Touch-and-Go Operations," states:

> A touch-and-go operation is an aircraft procedure used in flight training. It is considered an aeronautical activity. As such, it cannot be prohibited by the airport sponsor without justification. **For an airport sponsor to limit a particular aeronautical activity for safety and efficiency, including touch-and-go operations, the limitation must be based on an analysis of safety and/or efficiency and capacity, and meet any other applicable requirements**

7

> **for airport noise and access restrictions explained in chapter 13 of this Order**, *Airport Noise and Access Restrictions*.

*Id.* (Emphasis added). Rather than support Plaintiffs' position, the Manual makes it clear that the County cannot unilaterally ban piston-engine aircraft from touch-and-go operations, without at least obtaining FAA support and substantiation for the prohibition. The County cannot even unilaterally determine that an operation is not safe. Rather, FAA must make that finding.

Plaintiffs also provide a lawyer's declaration stating that a listing of airports either prohibit or regulate touch-and-go operations. *See* Opp., p.1. This is not definitive evidence and there is no allegation that these airports unjustly discriminate by barring only some types of aircraft from engaging in touch-and-go operations.

## VI. THE SAVINGS CLAUSE IN THE FEDERAL AVIATION ACT <u>HAS NO RELEVANCE HERE</u>.

Plaintiffs contend that the "savings" clause: in the Federal Aviation Act "Expressly Permits Plaintiffs' Claim." *Id.* at p.7. First, this argument does not apply to the AAIA or Grant Assurance 22. Second, the cases cited by Plaintiffs are inapplicable as they relate to alleged claims for negligence **in the execution** of aeronautical activities, *e.g., Carter v. Cent. Reg'l W. Va. Airport Auth.*, 2016 WL 4005932, *25 (S.D.W. Va. July 25, 2016) (plaintiffs sought money damages for loss of their home and possessions caused by landslide of man-made slope at airport); and *Abdullah, supra*, 181 F.3d 363 (injury onboard an aircraft); or involved airports not subject to Grant Assurance obligations, *Hammer, supra*, 373 Ark. 202. Here, Plaintiffs are not asserting that there was negligence in how touch-and-go operations were performed, and cannot deny that the County is subject to the AAIA and Grant Assurances.

8

Plaintiffs also cite *Emerald Dev. Co. v. McNeill*, 82 Ark. App. 193 (2003), which involved a dispute between competing owners of private, adjacent airports. There is no indication that the enjoined airport was subject to the AAIA and Grant Assurance obligations; and the court emphasized that the lower court "did not define or restrict what portions of the airspace could be used by either party." *Id*. at 198.

### VII. THE COMPLAINT FAILS TO PLEAD THAT DEFENDANTS CAUSED THE ALLEGED NUISANCE.

Plaintiffs have not refuted the obvious fact that the alleged nuisance was not caused by any act or omission of the Defendants. Defendants do not have the authority to unilaterally ban all piston-engine aircraft from operating at the Airport. In light of this fact, the responsibility for the allowance of such flights – and the alleged harm caused thereby – cannot be attributed to Defendants. Plaintiffs argue that the "FAA has recently reaffirmed that Defendants can abate this nuisance consistent with the Grant Assurances." Opp., p.11. There is no support for this conclusory conjecture and it defies the reality that an airport sponsor cannot unilaterally ban one type of aircraft from operating touch-and-go takeoffs and landings. Moreover, Plaintiffs are the proximate cause of the alleged nuisance since they allowed homes to be built despite knowledge of the existence of the Airport operations.

### VIII. THE FAA IS AN INDISPENSABLE PARTY.

Plaintiffs have failed to rebut Defendants' showing that the FAA is an indispensable party to this case. Plaintiffs have done nothing to dispel the fact that the County's compliance with an order requiring it to ban all piston-engine touch-and-go operations would subject the County to the FAA sanctions for violating the AAIA and Grant Assurance 22. The only way

9

to alleviate that risk is for the FAA to participate.  Plaintiffs inexplicably assert that "Defendants have not produced any evidence showing the nature of the FAA's alleged interest in this case." Opp., p.13.  This ignores the portion of the Motion which explains the FAA role in enforcing the Airport's federal Grant Assurance obligations.  *See* Motion, p.4.  Nor is there merit to Plaintiffs' assertion that dismissal is not appropriate even if the Court finds that the FAA is an indispensable party.  *See* Opp., p.13.  Also, if touch-and-go operations are not safe that is solely for FAA to determine.

In a footnote, Plaintiffs assert that a "hypothetical FAA administrative action is not sufficient" to render FAA indispensable "because 'an unsubstantiated or speculative risk will not satisfy the Rule 19(a) criteria.'"  *Id.* at 13 n.9 (citing *Sac & Fox Nation v. Norton*, 240 F.3d 1250, 1259 (10th Cir. 2001)).  However, whether a Native American tribe needed to be joined in litigation has nothing to do with a genuine concern that FAA could sanction the County for violating the AAIA and Grant Assurance 22(a).

IX.   **DR. CORBO SHOULD BE DISMISSED AS A DEFENDANT.**

Plaintiffs insist that the Acting Director of the Airport – Dr. Corbo – is a proper plaintiff. *See* Opp., p.14-15.  However, they fail to reference the Federal Rule of Civil Procedure relied on by Defendants for this argument – Rule 65(d) – much less attempt to explain why this Rule does not fully enable to enforce an injunction against the County and the Airport regardless of if Dr. Corbo is named as an individual defendant in the case.  Naming Dr. Corbo is an unnecessary tactic likely intended to intimidate Defendants.  It should not be permitted.

10

## CONCLUSION

For the above reasons, Defendants respectfully request that their Motion to Dismiss (ECF 17) be granted and that the Complaint and this action be dismissed.

Respectfully submitted this 15th day of May, 2024.

*/s/ M. Roy Goldberg*
M. Roy Goldberg
**STINSON LLP**
1775 Pennsylvania Avenue N.W., Suite 800
Washington, D.C. 20006
Telephone: (202) 728-3005
Email: roy.goldberg@stinson.com

Nathaniel T. Vasquez
**STINSON LLP**
1144 Fifteenth Street, Suite 2400
Denver, CO 80202
Telephone: (303) 376-8424
Email: nathaniel.vasquez@stinson.com

*Attorneys for Defendants*

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing pleading complies with the applicable type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1) and contains 2,694 words.

*/s/ Roy Goldberg*
Roy Goldberg

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on May 15, 2024, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system. Any other counsel of record will be served in accordance with the Federal Rules of Civil Procedure.

/s/ M. Roy Goldberg
M. Roy Goldberg