# Exhibit A

**EXHIBIT A**

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLORADO

Civil Action No. 1:24-cv-000711-DDD-STV

TOWN OF SUPERIOR, COLORADO, a municipal corporation of the State of Colorado; and THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF BOULDER, COLORADO, a County government in the State of Colorado,

**Plaintiffs,**

**v.**

THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF JEFFERSON, COLORADO, as successors in interest to the Jefferson County Airport Authority; and DR. STEPHANIE CORBO, in her official capacity as acting Airport Director of the Rocky Mountain Metropolitan Airport,

**Defendants.**

### DECLARATION OF M. ROY GOLDBERG, ESQ. TO AUTHENTICATE EXHIBITS 1, 2, 3 AND 4 HERETO

I, M. ROY GOLDBERG, ESQ., hereby declare and state as follows in connection with the Reply Brief in Support of Defendants' Motion to Dismiss in this case:

1. I am over 18 years of age, of sound mind, and otherwise competent to make this Declaration.

2. I am a partner in the law firm of STINSON LLP, and lead counsel for the Defendants in this case.

3. With regard to the role of "touch and go" operations and pilot training, attached as **Exhibit A.1** hereto is a true and accurate copy of a document issued by Mastery Flight Training, Inc. titled "Flying Lessons for January 27, 2011," which includes the following statements:

1

> **The "touch and go"** is a staple of flight training. A landing with just enough time on the ground to reconfigure the airplane for another takeoff, the purpose of a touch-and-go is to compress more landings (and takeoffs) into a flying lesson.
>
> \*   \*   \*
>
> **T&G practice also prepares the advanced student** and certificated pilot a technique for an emergency go-around should he/she detect a runway hazard after touching down—such as an animal or another airplane on the runway, or the inability to meet a "land and hold short" requirement.

(Emphasis in original)

4. Additionally, attached as **Exhibit A.2** hereto is a true and accurate copy of a selection portions of the "Aeronautical Information Manual (AIM) Basic Flight Information and ATC Procedures." The section in Chapter 4 titled "Option Approach" in section 4-3-23 states:

> 4-3-23 Option Approach
>
> The "Cleared for the Option" procedure will permit an instructor, flight examiner or pilot the option **to make a touch-and-go**, low approach, missed approach, stop-and-go, or full stop landing. **This procedure can be very beneficial in a training situation in that neither the student pilot nor examinee would know what maneuver would be accomplished.** The pilot should make a request for this procedure passing the final approach fix inbound on an instrument approach or entering downwind for a VFR traffic pattern. After ATC approval of the option, the pilot should inform ATC as soon as possible of any delay on the runway during their stop-and-go or full stop landing. **The advantages of this procedure as a training aid are that it enables an instructor or examiner to obtain the reaction of a trainee or examinee under changing conditions**, the pilot would not have to discontinue an approach in the middle of the procedure due to student error or pilot proficiency requirements, and finally it allows more flexibility and economy in training programs. This procedure will only be used at those locations with an operational control tower and will be subject to ATC approval.

(Emphasis added)

5. In connection with how FAA views touch-and-go operations in regards to congested airspace, attached as **Exhibit A.3** hereto is a true and accurate copy of a letter from the FAA to Robert E. Anderson, dated July 2, 2009. The letter responds to a request for "information regarding the point when a takeoff terminates and a pilot flying over a congested area would be

2

required to fly at or above a minimum altitude specified in the regulation."   The FAA letter states that 14 C.F.R. § 91.119, titled "Minimum safe altitudes: General," "'does generally not apply to aircraft operations within airport traffic patterns,' and that 'aircraft operating within a traffic pattern are excepted from the regulation for a considerable portion of each pattern, i.e., during climb to pattern altitude following each takeoff, and during descent from pattern altitude prior to each landing.'"  *Id*. at 1.  With regard to touch-and-go landings, FAA adds:

> With respect to touch and go landings, . . . the takeoff and landing exception to § 91.119 "applies equally to all practice approaches, **including repeated 'touch and go,'** 'stop and go,' and 'low approach' operations . . . ."  **We would like to emphasize that the NTSB has also applied the § 91.119 takeoff or landing exception to touch and go landings and other practice maneuvers**.

*Id.* at 2 (emphasis added).

6.       Attached as **Exhibit A.4** hereto is a true and accurate copy of a letter from FAA dated December 16, 2022 titled "Enforceability of the City of Torrance's Left Turn Restriction." In the letter, FAA states that the local airport's "airspace restriction" relating to left-turns upon takeoff "is not consistent with the FAA's statutory and regulatory framework; and relevant case law."  Page 2.  The letter adds:

> While it is accurate that the FAA generally encourages a "balanced approach" to address noise problems and discourages unreasonable airport use restrictions, the term "restrictions" in that discussion refers to ground-based mitigation measures, **not in-flight restrictions regulating aircraft departure procedures**. Federal law and policy distinguish between ground-based measures (generally consistent with an airport's proprietary authority) **and restrictions directing how aircraft may operate in the navigable airspace (expressly an FAA function beyond the authority of an airport proprietor).** FAA Order 5190.6B highlights this distinction in a few areas.

*Id.* (emphasis added).

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

3

Executed at Washington, D.C. this 15th day of May, 2024.

*/s/ M. Roy Goldberg*
M. Roy Goldberg