Exhibit A.3



U.S. Department
of Transportation
**Federal Aviation
Administration**

Office of the Chief Counsel

800 Independence Ave., S.W.
Washington, D.C. 20591

JUL 2 2009

Robert E. Anderson

Dear Mr. Anderson:

This letter is in response to your February 13, 2009 request for legal interpretation regarding
the minimum altitudes over congested areas established in 14 C.F.R. § 91.119. As indicated
in your letter, you are seeking information regarding the point when a takeoff terminates and
a pilot flying over a congested area would be required to fly at or above the minimum
altitude specified in the regulation. You also ask how the FAA defines a congested area.

Determinations of what constitutes a congested area under the regulations are made on a
case-by-case basis. *See* Legal Interpretation to F. Dennis Halsey, from Neil R. Eisner,
Assistant Chief Counsel (Jan. 5, 1978). Factors relevant to determining whether an area is a
"congested area" for purposes of part 91 include housing density, the presence of people,
and whether buildings are occupied. *See Administrator v. Folk*, NTSB Order No. EA-5404
(Aug. 12, 2008). For example, in the *Pick* opinion discussed in your letter, the NTSB
determined that a "subdivision—comprised of a minimum of 20 houses, in an area
approximately .5 mi[les by] .66 mi[les]—would qualify as a congested area." *Administrator
v. Pick*, NTSB Order No. EA-3646 (Aug. 11, 1972) (footnotes omitted). Therefore, the facts
indicated in your letter pertaining to the number of homes and residents in your community
would be relevant to determining whether the community is a congested area under part 91.

Next, you ask when a takeoff terminates during flight over a congested area. Section 91.119
provides that "except where necessary for takeoff or landing, no person may operate an
aircraft . . . [o]ver any congested area of a city, town, or settlement . . . [below] an altitude of
1,000 feet above the highest obstacle within a horizontal radius of 2,000 feet of the aircraft."
14 C.F.R. § 91.119(b).

The FAA has determined that "§ 91.119 does generally not apply to aircraft operations
within airport traffic patterns," and that "aircraft operating within a traffic pattern are
excepted from the regulation for a considerable portion of each pattern, i.e., during climb to
pattern altitude following each takeoff, and during descent from pattern altitude prior to each
landing." Legal Interpretation to Frank J. Deighan, from Donald Byrne, Assistant Chief
Counsel (Oct. 30, 1997).

With respect to touch and go landings, the interpretation noted that the takeoff and landing exception to § 91.119 "applies equally to all practice approaches, including repeated 'touch and go,' 'stop and go,' and 'low approach' operations . . . ." *Id.* We would like to emphasize that the NTSB has also applied the § 91.119 takeoff or landing exception to touch and go landings and other practice maneuvers. *See Administrator v. McCollough*, NTSB Order No. EA-4020 (Nov. 4, 1993) (stating that simulated landings fall under the section 91.119 exception); *Administrator v. Johnson*, NTSB Order No. EA-739 (Jul. 31, 1975) ("[T]hese practice maneuvers come within the takeoff or landing exemption to the [section 91.119] restrictions because their purpose is to improve a pilot's capabilities in those operations."). Therefore, if the operation is not within the traffic pattern, or involves the approaches noted above, the pilot must operate in accordance with §91.119.

You also inquired about how two National Transportation Safety Board (NTSB) decisions, *Administrator v. Travis*, NTSB Order No. EA-1114 (Feb. 17, 1978), and *Administrator v. Pick*, NTSB Order No. EA-3646, affect the interpretation of § 91.119 with respect to takeoff and landings in congested areas.

In the *Travis* case, the pilot violated the congested area altitude restriction after circling homes one-half mile from the airport at 100 feet in order to verify that his aircraft was functioning normally. *See Travis*, NTSB Order No. EA-1114. The takeoff or landing exception did not apply to the pilot because his actions could not "be viewed as part of any reasonable departure procedure." *Id.* Therefore, we do not believe that the *Travis* opinion is relevant to the issue you raise regarding student flying lessons conducted within established traffic patterns over congested areas.

Likewise, we do not believe that the *Pick* opinion is relevant to the question of takeoffs and landings under § 91.119. In that case, the pilots made circling passes over a congested area below the altitude restrictions of § 91.79 (now § 91.119) for the purpose of taking photographs. *Pick*, NTSB Order No. EA-3646. The matter of when takeoff ended or landing began was not at issue, and there is no indication in the opinion regarding whether the circling passes were conducted within an airport's traffic pattern. *See id.*

As discussed, we do not believe that these cases are relevant to the issue you present. Further, we note that FAA enforcement actions are made on a case-by-case basis by applying the facts of each case to relevant statutes and regulations, NTSB case precedent, and all FAA "validly adopted interpretations of laws and regulations . . . ." *See* 49 U.S.C. § 44709(d)(3).

This response was prepared by Dean Griffith, Attorney in the Regulations Division of the Office of the Chief Counsel, and was coordinated with the General Aviation and Commercial Division of Flight Standards Service. Please contact us at (202) 267-3073 if we can be of further assistance.

Sincerely,

Rebecca B. MacPherson
Assistant Chief Counsel for Regulations, AGC-200