Exhibit A.4



U.S. Department
of Transportation
**Federal Aviation Administration**

Office of the Chief Counsel

800 Independence Ave., S.W.
Washington, D.C. 20591

December 16, 2022

Ms. Lori D. Ballance, Esq.
Gatzke Dillon & Ballance LLP
2762 Gateway Road
Carlsbad, CA 92009

**RE: Enforceability of the City of Torrance's Left Turn Restriction**

Dear Ms. Ballance:

Thank you for your September 20, 2022, letter providing the City of Torrance's position on the enforceability of its left turn restriction (Torrance Municipal Code, § 51.2.3(e), *Take Offs and Landings*)[1] affecting flight operations at Torrance Municipal Airport.[2] Section 51.2.3(e) states, "Aircraft taking off to the west shall not turn left until they have either reached the ocean or attained an altitude of fifteen hundred (1,500) feet."[3]

You assert that the City's position is that the requirement set forth in § 51.2.3(e) is reasonable and necessary to protect a nearby residential community, and that the City has authority under Federal law to enforce the City's airspace restriction. We also note that the City has advised that "effective December 1, 2022, the City will begin the enforcement of Section 51.2.3(e)."[4] According to § 11.2.1 of the City's Code, it appears that violations of the restriction "shall be punishable by a fine not exceeding $1,000 or imprisonment for a term not exceeding six months, or by both the fine and imprisonment or as otherwise established by Cal. Penal Code § 19 then in effect."

Although we appreciate that the City believes that enforcing this ordinance will protect the important interests of its citizens, the Federal Aviation Administration's (FAA) view is that

---

[1] Although not specifically addressed in this letter, § 51.2.2, *Traffic and Training Patterns*, which regulates the airport's traffic pattern (including altitude), also raises preemption issues for reasons discussed in this letter. *See* FAA's Aeronautical Information Manual, Chapter 4, § 3 (*Airport Operations*).
https://www.faa.gov/air_traffic/publications/atpubs/aim_html/chap4_section_3.html
[2] Torrance Airport is a very active general aviation reliever airport with 276 based aircraft with 119,034 annual operations, or 326 operations per day on average. The FAA control tower is active between 7:00 AM and 8:00 PM. https://adip.faa.gov/agis/public/#/airportData/TOA.
[3] https://www.codepublishing.com/CA/Torrance/#!/Torrance05/Torrance0501.html#51.2.3
[4] Electronic mail message from Michelle G. Ramirez, Community Development Director, City of Torrance, to Jim Gates (Nov. 9, 2022, 11:34 AM).

24

enforcement of the ordinance is not a legally valid way to accomplish the City's goals. The position of the FAA remains unchanged from our February 18, 2020, letter to Mr. Jim Gates and August 9, 2022, letter to the City Attorney, Mr. Patrick Sullivan: the City's airspace restriction is not consistent with the FAA's statutory and regulatory framework, and relevant case law.[5]

In your letter, you assert that the City has authority to enforce the restriction based upon FAA policy statements made in the agency's Airport Compliance Manual, FAA Order 5190.6B (September 30, 2009). While it is accurate that the FAA generally encourages a "balanced approach" to address noise problems and discourages unreasonable airport use restrictions, the term "restrictions" in that discussion refers to ground-based mitigation measures, not in-flight restrictions regulating aircraft departure procedures. Federal law and policy distinguish between ground-based measures (generally consistent with an airport's proprietary authority) and restrictions directing how aircraft may operate in the navigable airspace (expressly an FAA function beyond the authority of an airport proprietor). FAA Order 5190.6B highlights this distinction in a few areas.[6]

Your letter also asserts that the left turn restriction found in § 51.2.3(e) is enforceable because it is grandfathered under the Airport Noise and Capacity Act of 1990 (ANCA), 49 U.S.C. § 47521, *et seq.*, and its implementing regulations, 14 C.F.R. part 161. The FAA's view is that this assertion is incorrect. ANCA's "grandfathering" provisions only exempt covered restrictions *from ANCA*; restrictions that are preempted or otherwise invalid under non-ANCA law remain unenforceable regardless of whether they fall within the terms of the grandfathering provisions.

Finally, your letter asserts that *Friends of the East Hampton Airport v. Town of East Hampton*[7] and *National Helicopter Corp. v. City of New York*[8] support the City's position that its left turn restriction is within the proprietary authority of an airport operator. However, in our view, these cases do not support the City's position. *National Helicopter* directly addresses the question of whether a State or local government acting as an airport proprietor has the authority to regulate in-flight aircraft operations. There, the court reviewed a series of noise mitigation measures (*e.g.*, weekday and weekend curfews) enacted by the City under its proprietary authority as owner of Manhattan's East 34th Street Heliport. One of the noise measures analyzed by the court included an in-flight operational restriction – a prohibition of sightseeing flights over Second Avenue and the requirement that such flights heading north and south fly only over the East and Hudson Rivers. The City argued that the invasive nature of helicopter noise justified the condition restricting a sightseeing aircraft's direction of flight and route in the airspace. The Second Circuit disagreed:

> [t]his argument, as the trial court recognized, evidences a misunderstanding of federal aviation law. Congress, the Supreme Court, and we have consistently stated that the law

---

[5] *See City of Burbank v. Lockheed Air Terminal*, 411 U.S. 624 (1973), and its progeny.
[6] See ¶ 7.9., *Local Rules and Procedures*, p. 7-7; ¶ 13.2., *Airport Noise and Access Restrictions, Background*, pp. 13-1 – 13-2.
[7] 841 F.3d 133 (2d Cir. 2016).
[8] 137 F.3d 81 (2d Cir. 1998).

controlling flight paths through navigable airspace is completely preempted. *See, e.g.*, [*British Airways*] *Concorde I*, 558 F.2d at 83 ("[L]egitimate concern for safe and efficient air transportation requires that exclusive control of airspace management be concentrated at the national level."); *City of Burbank*, 411 U.S. at 626–27 at 1856–57 (recognizing the federal government's possession of exclusive national sovereignty in U.S. airspace); 49 U.S.C. § 40103(a)(1) … *The proprietor exception, allowing reasonable regulations to fix noise levels at and around an airport at an acceptable amount, gives no authority to local officials to assign or restrict routes*. As a result, the City unlawfully intruded into a preempted area when it curtailed routes for the flights of certain Heliport aircraft. This condition was properly enjoined.[9]

It makes no difference that the City states that it will not enforce its airspace restriction "when the left turn is directed by the Tower." We note that the tower is closed between 8:00 PM and 7:00 AM. As a result, during those hours, a pilot would presumably have no choice but to fly the City-directed departure procedure to avoid being subject to a fine not exceeding $1,000 or imprisonment for a term not exceeding six months, or by both.

Although the FAA believes that the City's ordinance is preempted by Federal law, we understand the importance of this issue to the City. The FAA would welcome the opportunity to discuss potential solutions that would promote the City's objectives while avoiding interference with the FAA's exclusive role in regulating aircraft safety and the efficient use of the airspace. If you would like to arrange a meeting, please contact Jonathan Cross of my staff at 202-267-7173 or jonathan.cross@faa.gov.

Sincerely,

SARA L MIKOLOP
Digitally signed by SARA L MIKOLOP
Date: 2022.12.16 16:58:41 -05'00'

Sara Mikolop
Acting Assistant Chief Counsel for Regulations

cc: Patrick Sullivan, City Attorney for the City of Torrance

---

[9] *National Helicopter*, 137 F.3d at 91-92 (emphasis added).