IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 24-cv-00711-DDD-STV

TOWN OF SUPERIOR;
BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF BOULDER, COLORADO;

    Plaintiffs,

v.

BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF JEFFERSON, COLORADO;
DR. STEPHANIE CORBO,

    Defendants.

_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

Magistrate Judge Scott T. Varholak

This matter comes before the Court on Plaintiffs' Motion to Remand (the "Motion") [#21]. The Motion has been referred to this Court. [#22] The Court has considered the Motion and related briefing, the entire case file, and the applicable case law, and has decided that oral argument would not materially assist the Court in resolving the Motion. For the following reasons, this Court respectfully **RECOMMENDS** that the Motion be **GRANTED**.

**I.    FACTUAL BACKGROUND**

Defendant, the Board of County Commissioners of the County of Jefferson, Colorado, owns and operates the Rocky Mountain Metropolitan Airport (the "Airport"). [#4 at ¶¶ 6-7, 26] Defendant Dr. Stephanie Corbo is the Chief Financial Officer of Jefferson County and is the acting Airport Director. [*Id.* at ¶ 8] Plaintiff Town of

1

Superior ("Superior") is located immediately northwest of the Airport, with Superior's southern boundary located less than one mile from where the Airport's property ends. [*Id.* at ¶ 12] Superior is primarily located in Boulder County, which also encompasses the City of Boulder, and other cities and towns including Erie, Jamestown, Lafayette, Longmont, Louisville, Lyons, Nederland, and Ward. [*Id.* at ¶¶ 19, 21]

Subject only to adverse weather, the Airport is open 24 hours per day, 365 days per year. [*Id.* at ¶ 33] An aircraft taking off on one of the Airport's two primary runways will fly directly over Superior as soon as it flies beyond the end of the runway. [*Id.* at ¶¶ 28, 32] In 2022, on average, the Airport experienced at least one takeoff or landing (an "operation") every two minutes. [*Id.* at ¶¶ 34-35] In 2023, operations increased by 7.4 percent resulting in the Airport having more than one operation every two minutes. [*Id.* at ¶¶ 38-39] The 7.4 percent increase in operations is a typical yearly increase in operations at the Airport. [*Id.* at ¶ 43]

Approximately 38 percent of the operations at the Airport are training operations performed by flight schools based at the Airport. [*Id.* at ¶¶ 48-53] Nearly all of these aircraft are piston-engine training aircraft. [*Id.* at ¶ 54] Though most aircraft use fuel that does not contain lead, fixed-wing aircraft with one or more piston engines almost exclusively use "avgas" which does contain lead. [*Id.* at ¶¶ 56-58] Nearly all of the piston-engine aircraft operating at the Airport use avgas. [*Id.* at ¶ 60]

Pilots flying piston engine aircrafts may request permission to perform a "touch-and-go" operation.[1] [*Id.* at ¶ 79] Nearly all of the touch-and-go operations at the Airport

---

[1] A piston engine aircraft performing a typical takeoff will stop short of the assigned runway on the taxiway until cleared to enter the runway. [*Id.* at ¶ 69] When cleared, the aircraft will taxi onto the end of the assigned runway then will utilize full power and

are performed by piston-engine aircraft conducting training flights. [*Id.* at ¶¶ 83-84] The combination of low altitude, low-speed, and maximum power involved in touch-and-go operations creates maximum lead and noise exposure for an extended time over Plaintiffs' residents. [*Id.* at ¶ 90] The lead and noise pollution caused by piston-engine aircraft conducting touch-and-go operations creates health risks to Plaintiffs' residents. [*Id.* at ¶¶ 96-149] Plaintiffs have asked Jefferson County on several occasions to limit or eliminate touch-and-go operations but no meaningful changes have been made at the Airport. [*Id.* at ¶¶ 151-58, 172]

On March 12, 2024, Plaintiffs initiated this action by filing a Complaint for Injunctive Relief (the "Complaint") in the Boulder County District Court. [#4] The Complaint brings a single claim for injunctive relief, alleging that the use of touch-and-go operations at the Airport creates a public nuisance. [*Id.* at ¶¶ 181-98] The Complaint seeks a preliminary and permanent injunction against the use of touch-and-go operations at the Airport. [*Id.* at 20]

On March 14, 2024, Defendants removed the matter to this Court asserting that Plaintiffs' claims are completely preempted by federal law and raise a substantial federal question. [#1] On April 11, 2024, Plaintiffs filed the instant Motion arguing that their claims are not completely preempted, the Court therefore lacks subject matter jurisdiction, and the matter must be remanded to the Boulder County District Court. [#21] Defendants have responded to the Motion [#23] and Plaintiffs have replied [#25].

---

takeoff using the least amount of runway as safely possible. [*Id.*] In contrast, a touch-and-go operation requires the pilot to complete all of the following: safely land the aircraft, recover the aircraft, initiate a takeoff, and climb out straight ahead at the pre-defined speed until the aircraft reaches a safe maneuvering altitude. [*Id.* at ¶ 85]

## II. LEGAL STANDARDS

### A. Preemption

A district court may exercise federal question jurisdiction over any action "arising under" federal law. 28 U.S.C. § 1331. A case arises under federal law when the complaint "establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 27-28 (1983). Pursuant to the "well-pleaded complaint" rule, "federal jurisdiction can only exist where a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Colorado ex rel. Salazar v. Ace Cash Exp., Inc.*, 188 F. Supp. 2d 1282, 1283–84 (D. Colo. 2002) (citing *Cisneros v. ABC Rail Corp.*, 217 F.3d 1299, 1302 (10th Cir.2000)). If the plaintiff's complaint demonstrates that the case "'arises under' federal law," the defendant may remove the case to federal court. *Franchise Tax Bd.*, 463 U.S. at 10.

"Federal pre-emption is ordinarily a federal defense to the plaintiff's suit." *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987). Accordingly, federal pre-emption typically "does not appear on the face of a well-pleaded complaint," and would not "authorize removal to federal court." *Id.* *Complete* pre-emption, on the other hand, may justify removal. *Id.* at 63-64. Complete pre-emption is an independent corollary or exception to the well-pleaded complaint rule. *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 393 (1987); *Devon Energy Production Co. v. Mosaic Potash Carlsbad, Inc.*, 693 F.3d 1195, 1204 (10th Cir. 2012); *Schmeling v. NORDAM*, 97 F.3d 1336, 1339 (10th Cir. 1996). The doctrine applies when "the pre-emptive force of a statute is so

4

'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Caterpillar*, 482 U.S. at 393 (quoting *Metro. Life*, 481 U.S. at 65). "When the federal statute completely preempts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law," and the claim is removable. *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003). "[T]he 'complete preemption' doctrine should be applied sparingly, and the case should be remanded [to state court] absent clear congressional intent to create removal jurisdiction." *Ace Cash*, 188 F. Supp. 2d at 1284 (citing *Schmeling*, 97 F.3d at 1342); *see also Anderson v. Lehman Bros. Bank*, 528 F. App'x 793, 795 (10th Cir. 2013) ("There is a presumption against removal jurisdiction . . . and the party seeking removal has the burden of proof to establish jurisdiction." (citations omitted)). "The circumstances are so rare in fact that the Supreme Court has recognized complete preemption in only three areas: § 301 of the Labor Management Relations Act of 1947 ("LMRA"), § 502 of the Employee Retirement Income Security Act of 1974 ("ERISA"), and actions for usury against national banks under the National Bank Act." *Devon*, 693 F.3d at 1204-05.

Determining whether complete preemption exists is a two-part analysis in which the court asks: (1) whether "the federal question at issue preempts the state law relied on by the plaintiff," and (2) "whether Congress intended to allow removal in such a case, as manifested by the provision of a federal cause of action." *Dutcher v. Matheson*, 733 F.3d 980, 985-86 (10th Cir. 2013) (quoting *Devon*, 693 F.3d at 1205). Generally, the court will address the second prong of the analysis first because "[t]he existence of a

potential federal cause of action is critical; complete preemption is not the same as preemption." *Id.* at 986. Federal law must "*substitute[]* a federal cause of action for the state cause of action, thereby manifesting Congress's intent to permit removal." *Devon*, 693 F.3d at 1205 (emphasis added) (quoting *Schmeling*, 97 F.3d at 1342).

### B. Substantial Federal-Question Jurisdiction

The Supreme Court has instructed that "a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law." *Grable & Sons Metal Products, Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005). This is true "[e]ven though state law creates [a plaintiff's] causes of action" because a "case might still 'arise under' the laws of the United States if a well-pleaded complaint established that its right to relief under state law requires resolution of a substantial question of federal law in dispute between the parties." *Franchise Tax Bd.*, 463 U.S. at 13. But this circumstance describes a "special and small category" of cases. *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 699 (2006).

A federal court can exercise federal-question jurisdiction over an action that pleads only state-law claims if those claims "require[ ] resolution of a substantial question of federal law in dispute between the parties." *Franchise Tax Bd.*, 463 U.S. at 13. In *Grable*, the Supreme Court explained that the relevant question is: "does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." 545 U.S. at 314. "Like complete preemption, '[t]he "substantial question" branch of federal question jurisdiction is exceedingly narrow.'" *Bd. of Cnty. Comm'rs of Boulder Cnty. v. Suncor Energy (U.S.A.)*

*Inc.*, 25 F.4th 1238, 1257 (10th Cir. 2022) (quoting *Gilmore v. Weatherford*, 694 F.3d 1160, 1171 (10th Cir. 2012)). "It is not triggered by a 'mere need to apply federal law in a state-law claim.'" *Suncor Energy*, 25 F. 4th at 1257 (quoting *Grable*, 545 U.S. at 313). "Nor can it be triggered solely by a federal defense, in keeping with the well-pleaded complaint rule." *Id.*

## III. ANALYSIS

Here, Defendants allege that this Court's jurisdiction is premised upon the Airport Noise and Control Act, 49 U.S.C. § 47521, *et seq.* ("ANCA") and the Airport and Airway Improvement Act, 49 U.S.C. § 47107 ("AAIA"). [#1 at 1] Specifically, Defendants argue that:

> Removal is authorized because the claim for public nuisance raised in the Complaint—although purporting to be based on state law—actually raises a federal claim because it asks the Court to address an area that is subject to the federal government's extensive and pervasive control over aircraft operations at federally-funded airports such as the [Airport]. This includes, without limitation, efforts to require the Airport to cease permitting the operation of "touch-and-go" aircraft operations.

[*Id.* at 1-2] The Court addresses each of Defendants' arguments against remand below.

### A. Complete Preemption

Defendants argue that Plaintiffs' claims are completely preempted by federal aviation laws. [#23 at 10-13] The Seventh Circuit faced a similar question more than thirty-five years ago. In *Bieneman v. City of Chicago*, the plaintiff commenced a class action suit in federal court against the City of Chicago alleging that he and other northern Illinois property owners had been affected by noise from O'Hare Airport. 864 F.2d 463, 464 (7th Cir. 1988). His complaint alleged a deprivation of property without due process, a takings claim, and various state law claims. *Id.* After finding for the City

7

of Chicago on the plaintiff's federal claims, the district court held that the pendent state law claims had all been preempted by federal statutes and regulations. *Id.* at 464-65.

On appeal, the Seventh Circuit agreed that the plaintiff's federal claims failed. *Id.* at 466-70. The Seventh Circuit then turned to the plaintiff's state law claims. The Seventh Circuit first acknowledged that it had previously held that:

> Since the federal laws and regulations have preempted local control of aircraft flights, *Burbank* [*v. Lockheed Air Terminal, Inc.*, 411 U.S. 624], the defendants may not, to the extent they comply with such federal laws and regulations, be charged with negligence or creating a nuisance. Similarly, § 114.04 of the Wisconsin Statutes cannot be invoked to make unlawful flights which are in accordance with federal laws and regulations. . . . To the extent that the County may be violating the federal laws or regulations, the plaintiffs should . . . exhaust their administrative remedies.

*Id.* at 470 (quoting *Luedtke v. Cnty. Of Milwaukee*, 521 F.2d 387, 391 (7th Cir. 1975)). The Seventh Circuit continued, however, that "[s]ince *Luedtke* every court that has examined the question independently has come to the opposite conclusion." *Id.* (collecting cases). Given the contrary authority, the Seventh Circuit decided to revisit *Luedtke* and concluded that it was wrongly decided. *Bieneman*, 864 F.2d at 471-73.

The *Bieneman* Court gave three reasons for this conclusion. First, it noted that the Federal Aviation Act did not expressly preempt state damages remedies, which cuts against preemption. *Id.* at 471. Next, it noted that state courts award compensation for takings in inverse condemnation cases, and state courts routinely award compensation in air crash cases. *Id.* at 471. Thus, "[i]f damages are available for takings, and common law remedies are available on questions of fraud and safety, [there is no reason state courts cannot decide] questions of noise and chemical emissions." *Id.*

8

Finally, the *Bieneman* Court concluded that the *Luedtke* Court erroneously relied upon the Supreme Court's decision in *Burbank*.[2] The *Bieneman* Court noted that *Burbank* dealt with a city curfew that forbid departures from an airport during certain hours, which "directly regulated the airport's operations, interfering with the Federal Aviation Administration's contrary judgment." *Id.* In contrast, the plaintiff in *Bieneman* sought damages, not regulation. *Id.* at 472. While recognizing that "[p]erhaps this [wa]s a distinction without a difference," the *Bieneman* Court nonetheless determined that Supreme Court precedent recognized the distinction. *Id.* Specifically, the *Bieneman* Court noted that the Supreme Court has held that "federal law occupies the field of nuclear safety regulation" yet "federal law does not preempt common law remedies concerning nuclear safety." *Id.* (citing *Pac. Gas & Elec. Co. v. State Energy Conservation & Dev. Comm'n*, 461 U.S. 190 (1983)). Thus, if no preemption is the conclusion for nuclear safety legislation, "it must be the appropriate treatment for air travel as well." *Bieneman*, 864 F.2d at 472.

Despite ruling that federal law did not completely preempt the field of air travel, the *Bieneman* Court was careful to note the limits of its ruling. According to the Court:

> A word on what this means. Bieneman wants common law remedies, but these must be remedies for *wrongs,* as in [*Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238 (1984)]*,* or for those aspects of airport operation within the

---

[2] Defendants likewise rely on *Burbank* for the proposition that "the pervasive nature vested in the FAA with regard to lead in fuel and airport/aircraft noise—as well as the Grant Assurance obligations not to restrict Airport access to aircraft operations—leaves no room for the use of state and local laws to interfere with the federal regulation of fuel, noise, and aircraft service at the Airport." [#23 at 11] Notably, however, *Burbank* dealt only with the question of preemption, not complete preemption. 411 U.S. at 633 ("It is the pervasive nature of the scheme of federal regulation of aircraft noise that leads us to conclude that there is pre-emption."); *see also Lockheed Air Terminal, Inc. v. City of Burbank*, 457 F.2d 667, 670 (9th Cir. 1972) (indicating that the *Burbank* plaintiffs "brought suit in the United States District Court for the Central District of California").

> state's control as proprietor under *Burbank.* Federal law governs much of the conduct of O'Hare and its carriers. *See* 14 C.F.R. Part 36 (noise characteristics of aircraft), Part 150 (noise abatement procedures at airports). A state court could not award damages against O'Hare or its users for conduct required by these regulations, or for not engaging in noise-abatement procedures that the Federal Aviation Administration considered but rejected as unsafe. Bieneman's complaint suggests that damages should be awarded because there are too many flights per hour, or because the aircraft are older models not fitted with high-bypass turbofan engines, or because the planes do not climb at a sufficiently steep rate after takeoff. These subjects are governed by federal law, and a state may not use common law procedures to question federal decisions or extract money from those who abide by them. There may be, on the other hand, aspects of O'Hare's operations that offend federal law, or that federal norms do not govern. Perhaps, as Bieneman insists, the airport does not use adequate noise baffles around the perimeter of the airport, or perhaps it has built more runways than federal law requires (to the detriment of those under the new ones), or is out of compliance with the governing federal rules. The essential point is that the state may employ damages remedies only to enforce federal requirements (as in *Silkwood*) or to regulate aspects of airport operation over which the state has discretionary authority.

*Id.* at 472-73. Thus, while some claims related to airport operations may indeed be preempted by federal law, complete preemption related to air traffic does not exist and plaintiffs "may pursue [their] state-law contentions [related to air traffic] in state court." *Id.* at 473.

As indicated earlier, the *Bieneman* decision was consistent with every court to have previously addressed the preemption issue. *Id.* at 470 (collecting cases). And since *Bieneman* courts have consistently concluded that federal law does not completely preempt claims like those asserted by Plaintiffs in this case. *See, e.g.*, *Vorhees v. Naper Aero Club, Inc.*, 272 F.3d 398, 401-05 (7th Cir. 2001) (holding that the district court should have remanded the plaintiff's inverse condemnation suit related to airport activity because, while the plaintiff's claims may be preempted by federal law, complete preemption did not exist and the matter was thus improperly removed from

state court); *Bearse v. Port of Seattle*, No. C09-0957RSL, 2009 WL 3066675, at *3 (W.D. Wash. Sept. 22, 2009) (remanding claim for damages and injunctive relief resulting from increased flight traffic at SeaTac airport because state law claims were not completely preempted); *Denzik v. Reg'l Airport Auth. Of Louisville & Jefferson Cnty.*, 361 F. Supp. 2d 659, 663-64 (W.D. Ky. 2005) (remanding trespass, nuisance, invasion of property, and intentional infliction of emotional distress claims related to airplane activity over the plaintiff's property because, while federal preemption may apply to some of the plaintiff's claims, complete preemption did not apply); *City of Tipp City v. City of Dayton*, 204 F.R.D. 388, 391-94 (S.D. Ohio 2001) (finding "no basis" for concluding that the plaintiffs' airport noise nuisance claim was completely preempted by federal law). And though *Bieneman* distinguished *Burbank*, in part, based upon the fact that the *Bieneman* plaintiffs were not seeking injunctive relief, since *Bieneman*, courts have found a lack of complete preemption even in cases seeking injunctive relief. *Vorhees*, 272 F.3d at 401-05; *Bearse*, 2009 WL 3066675, at *3; *Denzik*, 361 F. Supp. 2d at 660, 663-64. The Court finds these cases persuasive. Indeed, Defendants have not cited a single case in which a court found complete preemption of a claim like those asserted by Plaintiffs.[3] [#23 at 11-15] Accordingly, the Court concludes that complete preemption does not apply.

---

[3] As Defendants note [#23 at 11-12], the Wisconsin Supreme Court in *Krueger v. Mitchell* did state that "injunctions prohibiting [the operation of an airport based on nuisances to neighboring property] are completely preempted under the [Federal Aviation Act of 1958]." 332 N.W.2d 733, 740 (Wis. 1983). But while the *Krueger* court did use the phrase "completely preempted," it appears to have been addressing the question of federal preemption, not complete preemption—indeed, the *Krueger* court had no basis to address whether removal to federal court was appropriate as the case had never been removed. And while it is true that Plaintiffs' claims may be preempted by federal law, complete preemption does not exist and Defendants can raise their

## B. Substantial Federal-Question Jurisdiction

Defendants also argues that jurisdiction is proper under *Grable* because Plaintiffs' state law claims implicate substantial federal questions. [#23 at 5-10] But as explained above, *Grable* jurisdiction "is not triggered by a 'mere need to apply federal law in a state-law claim.'" *Suncor Energy*, 25 F. 4th at 1257 (quoting *Grable*, 545 U.S. at 313). "Nor can it be triggered solely by a federal defense, in keeping with the well-pleaded complaint rule." *Id.*

Here, Plaintiffs' well-pleaded complaint does not implicate a substantial federal question. [#4] Rather, the federal question appears to arise solely from Defendants' anticipated defense—namely, whether the Defendants will violate various federal grant assurances if they were to prohibit piston-engine touch-and-go flights. [#23 at 6] But, again, the fact that the Boulder County District Court may need to apply federal law to analyze Defendants' preemption defense does not trigger *Grable* jurisdiction. *Suncor Energy*, 25 F. 4th at 1257.

This case is thus very different from *City of Tipp City*, relied upon by Defendants. [#23 at 6-7] There, the complaint involved allegations that the defendant failed to comply with FAA orders and thus was acting in violation of federal law. 204 F.R.D. at 395. As a result, the court concluded that it "*may* have subject matter jurisdiction over [the plaintiff's] claims if they require resolution of a substantial question of federal law." *Id.* (emphasis added). This was because the court may need to determine whether the FAA's orders had been violated—an issue raised on the face of the complaint. *Id.* In

---

preemption concerns in state court. *Felix v. Lucent Techs., Inc.*, 387 F.3d 1146, 1167 (10th Cir. 2004) (Because complete preemption did not apply to the plaintiffs' claims that the defendant sought to have removed to federal court, "[i]t will be up to the state court to analyze whether . . . preemption applies.").

contrast here, no such federal question is raised on the face of Plaintiffs' complaint, making *City of Tipp City* readily distinguishable. Thus, the Court concludes that it does not have substantial federal-question jurisdiction under *Grable* and its progeny.

### C. Conclusion

It may well be that Plaintiffs' claim is preempted by federal aviation law. But neither complete preemption nor substantial federal-question jurisdiction apply. Thus, the Court concludes that the question of whether Plaintiffs' claim is preempted by federal law should be decided by the Boulder County District Court. Accordingly, the Court respectfully RECOMMENDS that the Motion be GRANTED.[4]

## IV. CONCLUSION

For the foregoing reasons, there is no federal question presented on the face of Plaintiffs' Complaint, the complete preemption doctrine does not apply, and this matter was improperly removed to federal court because this Court lacks subject matter jurisdiction over Plaintiffs' claims. Accordingly, the Court respectfully **RECOMMENDS** that the Motion to Remand [#21] be **GRANTED**.[5]

---

[4] Plaintiffs seek fees and costs pursuant to 28 U.S.C. § 1447(c), arguing that removal was objectively unreasonable. [#21 at 14-15] The Court disagrees. While the bulk of the authority supports remand, there is no clear Tenth Circuit authority on point and the Court cannot conclude that removal was so objectively unreasonable as to warrant fees and costs.

[5] Within fourteen days after service of a copy of this Recommendation, any party may serve and file written objections to the magistrate judge's proposed findings of fact, legal conclusions, and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *Griego v. Padilla (In re Griego)*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review." *United States v. 2121 East 30th Street*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar

13

DATED: September 26, 2024               BY THE COURT:

                                        s/Scott T. Varholak
                                        United States Magistrate Judge

---

*de novo* review by the district judge of the magistrate judge's proposed findings of fact, legal conclusions, and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings of fact, legal conclusions, and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (holding that the district court's decision to review magistrate judge's recommendation *de novo* despite lack of an objection does not preclude application of "firm waiver rule"); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Refining Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (finding that cross-claimant waived right to appeal certain portions of magistrate judge's order by failing to object to those portions); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (finding that plaintiffs waived their right to appeal the magistrate judge's ruling by failing to file objections). *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (holding that firm waiver rule does not apply when the interests of justice require review).